DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Email: akadish@dtklawgroup.com

Presentment Date and Time: November 28, 2016 at 12:00 Noon
Objection Deadline: November 28, 2016 at 11:30 a.m.

*Counsel for First Wives Entertainment Limited Liability Company,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                              Chapter 11

FIRST WIVES ENTERTAINMENT                           Case No. 16-11345 (MKV)
LIMITED LIABILITY COMPANY,

                        Debtor.

----------------------------------------------------------x

## NOTICE OF PRESENTMENT OF APPLICATION OF FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY FOR AN ORDER AUTHORIZINGTHE RETENTION AND EMPLOYMENT OF MANN SOLUTIONS GROUP LLC AS CHIEF RESTRUCTURING ADVISOR

**PLEASE TAKE NOTICE** that upon the application (the "**Application**") of FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY, the above captioned debtor and debtor-in-possession (the "**Debtor**"), the Debtor seeks an order, pursuant to section 327(a) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") 2014 and 2016, authorizing the retention and employment of MANN SOLUTIONS GROUP LLC as Chief Restructuring Advisor for the Debtor, effective as of October 15, 2016.

**PLEASE TAKE FURTHER NOTICE** that the Application will be presented to the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge, in Chambers, at the United

States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, for signature on November 28, 2016 at 12:00 Noon (the "**Presentment Date**").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief sought in the Application must be (i) electronically filed with the Bankruptcy Court; (ii) delivered to the Chambers of the Honorable Mary Kay Vyskocil; (iii) served upon DiConza Traurig Kadish LLP, counsel to the Debtor, Attn: Allen G. Kadish, Esq., 630 Third Avenue, New York, New York 10017; and (iv) served upon the Office of the United States Trustee, 201 Varick Street, New York, New York 10014, Attn: Susan Golden, Esq., so as to be filed and received no later than no later than November 28, 2016 at 11:30 a.m. (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE THAT if no objections are timely filed and served, the Debtor may, on or after the Objection Deadline, submit the Order to the Court substantially in the form annexed hereto, which Order may be entered on or after the Presentment Date with no further notice or opportunity to be heard offered to any party.

Dated:  New York, New York
       November 16, 2016

DICONZA TRAURIG KADISH LLP

By: /s/ Allen G. Kadish
       Allen G. Kadish
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Fax:  (212) 682-4942
Email: akadish@dtklawgroup.com

*Counsel for First Wives Entertainment Limited Liability Company, Debtor* and *Debtor-in-Possession*

first wives entertainment llc\first wives-bankruptcy\engagement & billings\notice of presentment for mann retention.doc

DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Email: akadish@dtklawgroup.com

*Counsel for First Wives Entertainment Limited Liability Company,*
  *Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST WIVES ENTERTAINMENT | Case No. 16-11345 (MKV) |
| LIMITED LIABILITY COMPANY, | |
| Debtor. | |

-----------------------------------------------------------x

**APPLICATION OF FIRST WIVES
ENTERTAINMENT LIMITED LIABILITY COMPANY FOR AN
ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF MANN SOLUTIONS GROUP LLC AS CHIEF RESTRUCTURING ADVISOR**

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY ("**FWE**"), the

above captioned debtor and debtor-in-possession (the "**Debtor**"), hereby submits its application

for an order, pursuant to section 327(a) of the United States Bankruptcy Code (the "**Bankruptcy**

**Code**"), and Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") 2014 and 2016,

authorizing the retention and employment of MANN SOLUTIONS GROUP ("**MSG**") as Chief

Restructuring Advisor for the Debtor, effective as of October 15, 2016.  The facts and

circumstances supporting this application (the "**Application**") are as set forth herein and in the

Declaration of Carol S. Mann, a principal of MSG (the "**Declaration**"), annexed hereto as

Exhibit A and incorporated herein by reference.  In further support of this Application, the Debtor respectfully represents as follows:

## BACKGROUND

1.      On May 11, 2016, Aruba Productions, LLC, Arnold Venture Fund, L.P., and Edward H. Arnold (the "**Petitioning Creditors**"), filed an involuntary petition under chapter 7 of the Bankruptcy Code (the "**Involuntary Petition**") against the Debtor.

2.      On August 23, 2016, this Court granted the Debtor's motion to convert the involuntary chapter 7 case to a voluntary case under chapter 11 [Dkt. No. 10].

3.      No official committee of unsecured creditors, nor any trustee or examiner, has been appointed in this case.

4.      The Debtor is the holder of the underlying rights to, and the vehicle through which, *First Wives Club*, the iconic movie is being developed as a musical for the Broadway and global stage, as well as for associated marketing and merchandising.  The stage production opened in San Diego in 2009 and in Chicago in 2015, and the producers, business and talent teams are working to bring the production to maturity.  In order to do so, additional development, financing and investment are required, which it is expected will be accomplished, in part, through the chapter 11 process.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

5.      This Court has jurisdiction herein pursuant to 28 U.S.C. §§ 157(b)(1) and (2) and 1334.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1408.

7.      The statutory predicates for the relief sought herein are section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

## RELIEF REQUESTED

8.      By this Application, the Debtor respectfully requests that this Court enter an Order authorizing it to employ and retain MSG as its Chief Restructuring Advisor ("**CRA**"), pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, effective as of October 15, 2016.

9.      MSG will provide the services of Carol S. Mann, a seasoned restructuring advisor, as the Debtor's CRA.  The Debtor has determined that MSG and Ms. Mann have the strengths, resources and experience necessary to represent it as CRA in this case.  Given the nature of the case, the Debtor believes that retention of MSG as its CRA is appropriate.

10.     The Debtor and MSG have entered into that certain Engagement Letter (the "**Engagement Letter**"), a signed copy of which is annexed to the Declaration filed herewith as Exhibit A, and approval of which is sought herein.

## SCOPE OF EMPLOYMENT

11.     The professional services that the Debtor expects that the CRA will be called upon to render shall include:

(a)      Serving as FWE's lead restructuring advisor reporting to the FWE managers and lead producers, Paul Lambert and Jonas Neilson (the "**Managers**");

(b)      Developing potential restructuring plans or strategic alternatives for maximizing the enterprise value of FWE's assets and opportunities;

(c)      Using commercially reasonable efforts to attempt to implement such plan(s) or alternative(s);

(d)      Acting with the duties, power and authority generally equivalent to that of a chief executive officer, chief operating officer and chief financial officer subject to the direction of the Managers;

(e)      Working collaboratively with the Managers and with FWE's other professionals in evaluating and implementing strategic and tactical options and strategies through FWE's restructuring process and in complying with the procedures and requirements of chapter 11;

(f)      Providing leadership in respect of financial functions including, without limitation, strengthening competencies in finance including

3

strategic planning, supervision of cash management, supervision of general accounting, and supervision of financial reporting and information;

(g)     Supervising the preparation of all required reporting on behalf of FWE as debtor-in-possession;

(h)     Serving as testifying witness in respect of proceedings in the FWE chapter 11 case and in proceedings therein and related thereto;

(i)     Serving as the lead representative to negotiate with creditors and other parties interested in the chapter 11 case;

(j)     Directing FWE's legal, accounting and other professionals;

(k)     Overseeing development and implementation of an operating business plan to manage FWE and its assets in chapter 11;

(l)     Driving financial and operational performance in conformity with FWE's business plan and restructuring strategies;

(m)    Formulating and negotiating with respect to a plan of reorganization, sale or other ultimate transaction; and

(n)     Performing such other duties as may be required by the Managers in furtherance of the chapter 11 case and the Debtor's restructuring.

12.     MSG has indicated that it is willing to serve as the Debtor's CRA in this case to perform the services described above and to provide Carol S. Mann as the lead professional.

## MSG DOES NOT HOLD OR REPRESENT ANY ADVERSE INTEREST

13.     As set forth in greater detail in the Declaration filed in support hereof, MSG has completed a conflicts check including the review of, among others, the following entities: (a) the Debtor; and (b) the creditors and other parties identified on the Debtor's creditor matrix filed with the Court with the Petition, a copy of which is attached to the Declaration; (collectively, the "**Potentially Interested Parties**").  MSG believes its retention would not be adverse to any party, including Potentially Interested Parties.

14.     To the best of the Debtor's knowledge, based upon the Declaration and except as set forth herein, (a) neither MSG nor Ms. Mann holds or represents any interest adverse to the Debtor or its chapter 11 estate, its creditors or any other party-in-interest, and (b) MSG and Ms. Mann are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code.  Because MSG and Ms. Mann have substantial turnaround experience, the Debtor is aware

4

that MSG and Ms. Mann may represent, or may have represented, certain creditors of the Debtor's estate or other parties-in-interest in matters unrelated to the Debtor or this case.

15.     To the best of the Debtor's knowledge, (a) MSG and Ms. Mann's connections, if any, with those parties listed as Potentially Interested Parties (as defined in the Declaration) are disclosed in the Declaration, and (b) MSG and Ms. Mann, and any professionals who will work with her on this matter are not relatives of the bankruptcy judge presiding over this case, the United States Trustee for this Region, or any person employed in the Office of the United States Trustee for the Southern District of New York.

**COMPENSATION AND REIMBURSEMENT OF EXPENSES**

16.     Subject to this Court's approval and in accordance with section 330 of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines, other orders of this Court and the rules and other procedures that may be fixed by this Court, the Debtor requests that MSG be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses MSG incurs at the rates commonly charged for such costs to other MSG clients.

17.     The Debtor understands that MSG's hourly rates are disclosed in the Engagement Agreement, and are subject to periodic adjustments to reflect economic and other conditions. Should rate changes occur, MSG will promptly notify the Debtor, the United States Trustee and the Court and provide appropriate notice.

18.     Other than as set forth above, there is no proposed arrangement to compensate MSG in connection with its services in this case.

## RETENTION EFFECTIVE AS OF OCTOBER 15, 2016

19.     The Debtor requests that the retention and employment of MSG be approved effective as of October 15, 2016, which approximates the date MSG began to offer services to the Debtor.

## CONCLUSION

20.     No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court enter an order substantially in the form annexed hereto (a) approving the Engagement Letter and authorizing the Debtor to retain and employ MSG as its CRA in this case, effective as of October 15, 2016, and (b) granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York          DICONZA TRAURIG KADISH LLP
       November 16, 2016

                                   By: /s/ Allen G. Kadish
                                      Allen G. Kadish
                                 630 Third Avenue
                                 New York, New York 10017
                                 Tel:  (212) 682-4940
                                 Fax:  (212) 682-4942
                                 Email: akadish@dtklawgroup.com

*Counsel for First Wives Entertainment Limited*
*Liability Company, Debtor and Debtor-in-Possession*

c:\users\frontdesk\dropbox\clio\first wives entertainment llc\first wives-bankruptcy\engagement & billings\application to retain accountant\applicn for ord ret of Mann.docx

6

## **EXHIBIT A**

**Declaration**

DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Email: akadish@dtklawgroup.com

*Counsel for First Wives Entertainment Limited Liability Company,*
*    Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                              Chapter 11

FIRST WIVES ENTERTAINMENT                           Case No. 16-11345 (MKV)
LIMITED LIABILITY COMPANY,

                        Debtor.

----------------------------------------------------------x

## **DECLARATION**

CAROL S. MANN hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief:

1.      I am a turnaround executive with several years of experience.  I submit this declaration in support of the application (the "**Application**")[1] of First Wives Entertainment Limited Liability Company, the debtor and debtor-in-possession (the "**Debtor**"), for an order, pursuant to section 327(a) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") 2014 and 2016, authorizing the retention and employment of MANN SOLUTIONS GROUP LLC ("**MSG**") as Chief Restructuring Advisor ("**CRA**") for the Debtor, effective as of October 15, 2016.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings set forth in the Application.

2.      I am the principal of MSG. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein.

## QUALIFICATIONS

3.      I have substantial experience in turnaround management.  My *Curriculum Vitae* is attached as <u>Exhibit 1</u> hereto.  Given the nature of the case, I believe MSG and I are qualified to serve as CRA, and the Debtor believes that such retention as its CRA is appropriate.

## DISINTERESTEDNESS

4.      Except as set forth herein, (a) neither MSG nor I hold or represent any interest adverse to the Debtor or its chapter 11 estate, its creditors or any other party-in-interest, and (b) MSG and I are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code.

5.      In connection with preparing this declaration, I reviewed the following names for any potential conflicts: (a) the Debtor; and (b) the creditors and other parties identified on the Debtor's creditor matrix filed with this court with the Petition and attached as <u>Exhibit 2</u> hereto (collectively, the "**Potentially Interested Parties**").

6.      Because I have substantial turnaround experience, the Debtor is aware that I may represent, or may have represented, certain creditors of the Debtor's estate or other parties-in-interest in matters unrelated to the Debtor or this case.  I may have in the past represented, may currently represent, and may in the future represent parties-in-interest of the Debtor in connection with matters unrelated to the Debtor or this case.  Moreover, I represent a number of clients involving different parties, and businesses, some of which are now and may in the future be connected with or represent the Potentially Interested Parties or other parties-in-interest in this case.  From time to time, I will review my disclosures in this case and in the event that additional

material connections are discovered, I will disclose such information to this court on notice to parties-in-interest and the United States Trustee.

7.      None of my representations of parties-in-interest in this case comprise a material component of my practice, nor do I or would I represent such parties on any issue relating to the Debtor or its estate.

8.      Based on the foregoing and except as set forth herein, I have been able to ascertain based on the information currently available to me, that I do not represent any interest adverse to the Debtor in the matters upon which I am to be engaged.  To the best of my knowledge, information and belief and qualified by the information set forth above, MSG and I are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code in that neither MSG nor I:

(a)      is (or am) a creditor, equity security holder or insider of the Debtor;

(b)      is (or am), nor was, within two years before the date of the Order for Relief in the Debtor's chapter 11 case, a director, officer, or employee of the Debtor; and

(c)      has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

9.      Neither I nor any member of my practice who will work on this matter is a relative of the bankruptcy judge presiding over this case, the United States Trustee for this Region, or any person employed in the Office of the United States Trustee for the Southern District of New York.

## COMPENSATION AND REIMBURSEMENT OF EXPENSES

10.     I intend to apply for compensation for professional services rendered in connection with this case subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, U.S. Trustee Guidelines and other Orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred, to the extent and on the terms set forth in the engagement letter attached as Exhibit 3 hereto (the "**Engagement Letter**").

11.     The Debtor understands that my hourly rates are subject to periodic adjustments to reflect economic and other conditions.  Should rate changes occur, I will promptly notify the Debtor, the United States Trustee and the Court and provide appropriate notice.

12.     Subject to this Court's approval and in accordance with section 330 of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines, other orders of this Court and the rules and other procedures that may be fixed by this Court, and subject to the Engagement Agreement, the Debtor requests that I be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses I incur, including, but not limited to, photocopies, word processing, courier service, computer assisted research, docket and court filing fees, telecommunications, travel, court reporting charges, and any other incidental costs advanced by the me specifically for these matters, at the rates commonly charged for such costs to other clients.  In addition, I have advised the Debtor that I intend to seek compensation for all time and expenses associated with its retention as a professional, including the preparation of this Application, the Declaration, and related documents, as well as any monthly fee statements or interim or final fee applications.

13.     Other than as set forth herein, and in the Engagement Agreement, there is no proposed arrangement to compensate me.   No promises have been received by me as to compensation in connection with this Case other than in accordance with the provisions of the Bankruptcy Code.

14.     By reason of the foregoing, I believe that MSG is eligible to be retained CRA for the Debtor in this case pursuant to section 327(a) of the Bankruptcy Code and the applicable Bankruptcy Rules.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
November 15, 2016                                        /s/ Carol S Mann
                                                        **Carol S. Mann**

Clio\first wives-bankruptcy\engagement & billings\declaration of mann suppt application .docx

## <u>EXHIBIT 1</u>

***Curriculum Vitae* of Carol S. Mann**

# Carol S. Mann

56 Byberry Rd
Hatboro, PA 19040
**(267) 404-6266**
**carolsmann2010@gmail.com**

Award-winning chief executive with accomplishments as an Interim CEO of both troubled and profitable companies in a variety of industries, partner in Big 5 management consultancies and successful entrepreneur.

## REPRESENTATIVE ACCOMPLISHMENTS

Increased a $400M clothing manufacturer's profits by more than $100M. As CRO, cut chargebacks by $15M. Reduced licensing agreement costs by $15M annually. Increased licensing revenue to $2M annually. Trimmed operational costs by $75M. Saved $30M in interest and loan payments. Revamped sourcing, saving $8M annually. Decreased payroll by over $14M.

Directed the integration of a $400M division of the world's largest publishing conglomerate located in the Netherlands. Increased profit by $75M in the first full year after acquisition. As interim COO,was required to replace the existing owner/management team within 6 months. Unified IT systems on three continents. Orchestrated the integration process in a worldwide workforce conducting business in seven different languages. Closed two plants, leaving three (US, Asia, Netherlands). Accelerated transition by one year improving profitability and projected results by more than $10M. Consolidated banking relationships and reduced banking and accounting costs by reducing operating accounts from 15 to 3 and banks from 15 to 2.

Led the development, growth, and increased profitability of an electrical contracting business by bringing value strategies with focus on total business solutions on including finance, operations, and project management.

Played a lead role in the growth and evolution of an electronics equipment company. As COO of HMI, drove sales to $7M. Imported and exported to 5 different European countries and 2 Asian countries daily. Was responsible for all sourcing, negotiating, pricing and credit decisions as well as financing both for our company and our customers. Developed costing procedures that reduced manufacturing overruns and unallocated overtime by 75%. Increased profit margins by 35%. Expanded plant capacity by 15% without adding overhead. Introduced currency hedging to the company and the bank. Helped cut a deal between the two banks for a corresponding relationship for all of their International work, facilitating our line of credit extension and freeing p the credit facility for us. Created a way for the bank to lend us more money using the credit strength of our AAA rated customers, fill our orders more quickly and pay down our long term line at an accelerated rate.

## SKILLS

Started and led successful restructuring and interim management practices for KPMG and BDO Seidman.

Stellar record of improving profits and sales in dynamic business environments.

## AWARDS / RECOGNITIONS

Quoted in textbooks and magazines including Fortune Magazine.

Voted one of the "Top 15 People to Watch" in the Turnarounds and Workouts Newsletter.

Subject of a US News and World Report Article on Female Entrepreneurs.

Included in A. David Silver's book, "Enterprising Women: Lessons from the Greatest 100 Entrepreneurs of Our Day" and as a case study in another of his books on Turnaround Survival.

Received 2005 Women of Distinction Award, US Congressional and US Senatorial Commendations for her work with Middle Market Companies this year.

1

Penetrated airport, hospital and other markets with sophisticated software development and improved controlled access, complex prior to 9/11 that increased revenue by $2M. Cut annual, recurring expenses by $6M. Hired and trained replacement management team. Negotiated with European suppliers to import German supply parts and export US developed software that interfaced with European developments. Worked with the company through two management transitions as the owner and founder passed away and then several years later after his wife who took his place passed away.

Achieved a smooth transition of the US operations of a highly visible, international environmental non-profit organization to its Netherlands headquarters. Worked through a very volatile political environment in Washington D.C. and the nonprofit sector saving over $3M and significant negative press and lost revenue. Overcame the opposition of very vocal and emotional supporters, legal team, more than 3,500 volunteers collecting cash and very angry displaced managers. Managed over 25 properties and severally damaged pieces of real estate through construction and leasing around the US. Concluded this sensitive project in three months rather than the one year projected timeline resulting in saving over $3M and reducing significant negative press and lost revenue.

Dramatically increased sales, profits and customer satisfaction for a wood furniture manufacturer. As Interim President/CRO, cut costs by 20% annually. Installed a new accounting system. Exposed systematic embezzlement by CFO. Improved order turnaround time from 90 days to 60 days. Identified, then abandoned unprofitable products, markets and accounts. Increased factory capacity by 20% with minimal investment. Lead company through Chapter 11 when new owners put in family management and eventually could not sustain management productivity.

Created turnaround plan for US Department of Housing and Urban Development. Hired by new administration to clean up long-standing problems using past and current staff. devised and won approval of improvement plan from both old and new administrations. Saved $50M over 2 years.

Restored profitability to a $400M music retailer and distributor. As interim CEO, inherited a firm in Chapter 11 that was still profitable. Slashed expenses, saving more than $500M annually. Re-negotiated sales contract minimums, sales minimum commission agreements, leases, union contracts and employee costs benefits agreements. Discontinued unprofitable product lines. Renegotiated terms with creditors committee, debtors and creditors council, and lenders to create cash collateral agreement. Discovered fraud and breach of distribution agreements, tax evasion, and filing of false financial statements in a public company.

2

Compelled to legally report a client company of our own firm.

Successfully guided a woolen mill and apparel manufacturing company through Chapter 11 bankruptcy  to cap losses and exposure environmentally. Restored profitability in first quarter. Solved financial , manufacturing inefficiency, management transition and other issues threatening the company's existence. Negotiated wage cuts with the Union. Forged a cleanup settlement with EPA for pennies on the dollar.

As CRO, lead Dairy through Chapter 11 when its markets dried up due to school districts who became  sponsored  by  Pepsi  Cola. Created new business plan to create sales to replace lost revenue, restructured debt to give dairy time to restructure, and worked with management to change operations to accommodate new operations necessary to make profit with new volumes.

Sharply increased the profitability of a running shoe manufacturing company. As COO, replaced the President. Created new marketing plan that increased sales and saved $6M annually in marketing costs. Outsourced manufacture of key products cutting cost overruns by 200%. Logged savings of 30% on overall costs.

**PROFESSIONAL EXPERIENCE**

## **Founder/President,** Mann Solutions Group (Triage)

2004 - PRESENT

Founded company to provide business integration (business acceleration TM) services and turnaround services to middle market companies. Created a product called Business Acceleration Service (TM) to be used in combination with private equity  to accelerate change management. Through expert analysis and accelerated assimilation of functional operations, manufacturing. finances, IT, human resources and overall strategic direction we were able to set the company on course and achieve an accelerated ROI to the new stakeholders. We also provided traditional turnaround services.

## **Partner Restructuring Services,** BDO Seidman LLP

2000 - 2003

BDO Seidman is a big 5 accounting firm. Recruited to start and manage a Turnaround Services and Interim Management Group. Hired and managed consultants. Personally provided CEO services to multiple companies, often simultaneously while managing the practice and developing new business.

3

**Managing Director–Restructuring Services /Interim Management,** KPMG

*1997 - 2000*

Recruited to build a turnaround and interim management practice for the Northeast Region of a Big 5 Consultancy Finn. Managed business development and marketing, sales, and key client sales team leader. Provided Public speaking, bankruptcy creditor committee presentations and strategies and represented finn at national presentations. Hired and managed consultants on large interim management engagements for business integration supporting mergers and acquisitions and corporate turnarounds. Specializing in companies in the middle market range from $20M to $450M revenue.

**Founder/President,** Triage, Inc.

*1985-1997*

Founded company before turnaround industry was "officially" recognized. Provided a full range of turnaround and interim CEO services.

**Executive Vice President and Chief Operating Officer,** HMI

*1980–1985*

HMI is manufacturer of electronic production equipment. Recruited as Marketing Manager in 1980. Promoted to sales and Marketing Manager in 1981, to VP of Sales and Manufacturing in 1982 and to EVP and COO in 1983.

**EDUCATION**

**Philadelphia University,** BA Business Administration 1985*

**University of Pennsylvania – Instructor,** Entrepreneurship Program 1989–1990

**(Turnaround) Management Association,** Certified Turnaround Professional Course

**KPMG,** 80 hours Continuing Education Program

**BDO Seidman,** 120 hours Continuing Education Program

4

## **EXHIBIT 2**

**Potentially Interested Parties**

Ed Arnold
C/O Thomas H. Baer, Esq.
712 Fifth Avenue, 34th Floor
New York, NY 10019

Arnold Venture Fund
C/O Thomas H. Baer, Esq.
712 Fifth Avenue - 34th Floor
New York, NY 10019

Aruba Productions
260 West 44th Street, Suite 401
New York, NY 10036

Daniel Choueka
1517 East 14th Street
Brooklyn, NY 11230

Darren Deverna
915 Secaucus Road
Secaucus, NJ 07096

Delaware Division of Corporations
Attention Franchise Tax
410 Federal Street, Ste 4
Dover, DE 19901

Lamont Dozier
C/O David H. Friedlander, Esq.
81 Park Drive
Mount Kisco, NY 10549

First Wives World, LLC
C/O Jonas Neilson
19111 Collins Avenue #106
Sunny Isles Beach, FL 33160

Franklin, Weinrib, Ruddell & Vassallo, P.C.
Attn: Matthew Lefferts
488 Madison Ave - 18th Floor
New York, NY 10022

FWC Musical Limited Liability Company
C/O Paul Lambert
25 Catskill Court
San Anselmo, CA 94960

Gildea & Ivanis, LLP
Attn: Scott Gildea
535 Fifth Avenue, 30th Floor
New York, NY 10017

Paul Gillchrist
C/O Frank Anthony Taddeo
Law Office Of Frank Taddeo Jr.
100 Wall St # 20
New York, NY 10005

Paul Gillchrist
C/O Sands Aviation, LLC
5500 Haven Street
Las Vegas, Nevada 89119

Estate of Olivia Goldsmith
C/O Nicolas Ellison
55 Fifth Avenue, 15th Floor
New York, NY 10003

Grain of Sand Productions, LLC
Elizabeth Williams
147 Shonnard Terrace
Yonkers, NY 10701

Eddie and Brian Holland
C/O Clarence B. Tucker, Sr.
Clarence B. Tucker Sr., PLCC
24151 Telegraph Road, Suite 220
Southfield, MI 48033

Rupert Holmes C/O Creative Artists
Attn: Olivier Sultan
405 Lexington Avenue
New York, NY 10174

Integro Insurance
1 State Street Plaza, 9th Floor
New York, NY 10004

Internal Revenue Service
290 Broadway
New York NY 10007

Internal Revenue Service
Bankruptcy Unit
P.O. Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia PA 19101-7346

Paul Lambert
25 Catskill Court
San Anselmo, CA 94960

Jonas Neilson
19111 Collins Avenue #106
Sunny Isles Beach, FL 33160

Thomas & Susan Neilson
C/O 19111 Collins Avenue #106
Sunny Isles Beach, FL 33160

New York City Department of Finance
Attn: Legal Affairs
345 Adams Street 3rd Floor
Brooklyn NY 11201

New York State Department of Labor
Attn: Debbie Anziano
State Office Campus
Building # 12, Room # 256
Albany NY 12240

New York State Department of Labor
State Office Campus Building #12
Room #256
Albany NY 12240

New York State Department of Taxation and Finance
Attn: Office of Counsel
Building 9
W.A. Harriman Campus
Albany NY 12227

New York State Department of Taxation and Finance
Bankruptcy Section
P.O. Box 5300
Albany, NY 12205-0300

New York State Department of Taxation & Finance
Bankruptcy/Special Procedures Section
P.O. Box 5300
Albany NY 12205-0300

New York State Insurance Fund
8 Corporate Center Drive 3rd Floor
Melville NY 11747-3129

Andrew Nolan
Stonehenge Fleming Financial Services, Limited
15 Suffolk Street
London SW1Y 4HG United Kingdom

Old Globe Theater
1363 Old Globe Way
San Diego, CA 92101

Paramount Licensing Inc.
FKA Viacom Consumer Products, Inc.
5555 Melrose Ave
Los Angeles, California 90038-3989

Parking Violations Bureau
210 Joralemon Avenue
Brooklyn NY 11201

Donald J. Pierce
2134 South Walnut Street, Unit 19
Boulder, CO 80302

Richard Pierpont
6987 Royce Circle
Victor, NY 14564

Production Resource Group/PRG
Joseph Bostick
915 Secaucus Road
Secaucus, NJ 07096

Ron Ray
C/O Frank Anthony Taddeo
Law Office Of Frank Taddeo Jr.
100 Wall St # 20
New York, NY 10005

Ron Ray
C/O Sands Aviation, LLC
5500 Haven Street
Las Vegas, NV 89119

State of Delaware
Division of Corporations
P.O. Box 898
Dover, DE 19903

State of Delaware
Division of Corporations
John G. Townsend Bldg.
401 Federal Street, Suite 4
Dover, DE 19901

State of Delaware
Division of Revenue
Attn: Office of Financial and Account Services
820 N French St # 2
Wilmington, DE 19801

Linda Bloodworth Thomason
C/O Harry Thomason
4024 Radford Avenue
Building 5, Suite 104
Studio City, CA 19604

United States Attorney's Office
Southern District of New York
Attention: Tax & Bankruptcy Unit
86 Chambers Street Third Floor
New York NY 10007

United States Trustee's Office
Region 2
U.S. Federal Office Building
201 Varick Street Room 1006
New York NY 10014

Dr. Joel Yarmush
1 Hooper Drive
West Orange, NJ 07052

## **EXHIBIT 3**

**Engagement Letter**

## CHIEF RESTRUCTURING ADVISOR ENGAGEMENT LETTER

October 15, 2016

First Wives Club Entertainment Limited Liability Company
Attention: Paul Lambert and Jonas Neilson, Managers
c/o 25 Catskill Court
San Anselmo, California 94960

> Re:   Engagement of
>        Mann Solutions Group, LLC
>        As Chief Restructuring Advisor

Dear Mr. Lambert and Mr. Neilson:

This letter agreement will confirm and set forth the terms and conditions of the engagement of MANN SOLUTIONS GROUP, LLC ("MSG") by FIRST WIVES CLUB LIMITED LIABILITY COMPANY, a Delaware corporation, debtor and debtor-in-possession ("FWE"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter agreement by each of the parties below, this letter agreement will constitute an agreement between FWE and MSG, contingent only upon Court approval.

1. Court Approval

    FWE is a debtor and debtor-in-possession in Chapter 11, in Case No. 16-11345 (MKV), in the United States Bankruptcy Court for the Southern District of New York (the "Court"). This agreement is in all respects contingent upon Court approval.

2. Chief Restructuring Advisor

    MSG shall serve as the Chief Restructuring Advisor (the "CRA") of FWE. MSG shall make available to FWE the services of Carol S. Mann as the lead professional on behalf of MSG as CRA.

3. Duties and Powers

    The CRA's duties and powers shall include but not be limited to the following:

    (i)   The CRA will serve as FWE's lead restructuring advisor reporting to the FWE managers and lead producers, Paul Lambert and Jonas Neilson (the "Managers"). The CRA shall manage the development potential restructuring plans or strategic alternatives for maximizing the enterprise value of FWE's assets and opportunities. Subject to the authority of the Managers, the CRA shall determine which plan(s) or alternative(s) are appropriate under the circumstances and the CRA shall use commercially

reasonable efforts to attempt to implement such plan(s) or alternative(s). Such strategies may include identifying strategic alternatives and negotiating with potential restructuring transaction parties, merger, acquisition or business partners or acquirers of some or all of FWE's assets, with parties to contracts and with other parties, and with current, potential or new sources of financing or investment.

(ii)     The CRA shall have the power and authority of senior management and shall serve with the power and authority generally equivalent to that of a chief executive officer, chief operating officer and chief financial officer (subject to paragraph 5 and 15 below), subject to the direction of the Managers.

(iii)    The CRA will work collaboratively with the Managers and with FWE's other professionals in evaluating and implementing strategic and tactical options and strategies through FWE's restructuring process and in complying with the procedures and requirements of Chapter 11.

(iv)     The CRA's role will include the following:
- Provide leadership in respect of financial functions including, without limitation, strengthening competencies in finance including strategic planning, supervision of cash management, supervision of general accounting, and supervision of financial reporting and information;
- Supervise the preparation of reporting as required on behalf of FWE as debtor-in-possession;
- Serve as testifying witness in respect of proceedings in the FWE Chapter 11 case and in proceedings therein and related thereto;
- Serve as the lead representative to negotiate with creditors and other parties interested in the Chapter 11 case;
- Direct FWE's legal, accounting and other professionals;
- Oversee development and implementation of an operating business plan to manage FWE and its assets in Chapter 11;
- Drive financial and operational performance in conformity with FWE's business plan and restructuring strategies.
- Formulate and negotiate with respect to a plan of reorganization, sale or other ultimate transaction.

4.    <u>Fees and Expenses</u>

The CRA's fees will be based on the hours charged as MSG's regular hourly rates, which for 2016 are:

- Principals               $550.00-640.00
- Senior Associates        $300.00-400.00
- Associates               $285.00-385.00
- Accountants/Consultants  $210.00-280.00

● Analysts                    $125.00-185.00

Rates are subject to periodic adjustment.

Payment during the Chapter 11 shall be subject to payment of a monthly cap of $10,000.00 regardless of the number of hours or effort expended. The balance of fees shall be forfeited absent further written agreement of the parties and approval of the Court.

The CRA's fees and expenses, as may be allowed, shall be deemed an administrative claim of FWE's estate equivalent to and on par with other professionals of the estate.

Monthly, on or before the twentieth of each subsequent month, the CRA shall provide to FWE and its counsel a report of the hours expended and the fees due, and expenses and out of pocket disbursements for which reimbursement is sought, in conformity with the Fee Guidelines of the Court, the Fee Guidelines of the United States Trustee, and any other applicable orders, rules and procedures of the Court.

Payment shall be only in accordance with appropriate orders of the Court.

5. Independent Contractor

Only an independent contractor relationship shall be created by this Agreement. As an independent contractor, the CRA shall not be considered an officer, director or employee of FWE and shall incur no liability as such. MSG shall have complete and exclusive charge of the management and operation of its own business. MSG will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

MSG shall keep FWE informed as to staffing and shall avoid duplication of effort.

6. Reporting

The CRA shall provide regular verbal or written reports to the Managers and shall periodically provide the Managers with the status of actions and activities which have been initiated and/or actions and activities which are being planned but not yet initiated. The CRA will make itself available for all regular and special meetings of the Managers assuming receipt of reasonable notice thereof. The parties acknowledge they are not located in the same city and thus telephonic (and similar) communications will be the acceptable norm.

7. Employment by MSG

Ms. Mann will continue to be employed by and operate through MSG (or others or in other capacities) and, while rendering services to FWE, will continue to work on

Doc ID: fe725935bce345abb9bfa2fdfa178e710b71f5f0

other unrelated matters, which will not conflict or unduly interfere with services
pursuant to this engagement.

8. Projections, Reliance, Limitation

The services to be rendered by the CRA may include the preparation of projections
and other forward-looking statements. Numerous factors can affect the actual results
of operations, which may materially and adversely differ from those projections and
other forward-looking statements. In addition, the CRA will be relying on
information provided by members of management or others in the presentation of
those projections and other forward looking statements. Neither the CRA nor MSG
makes any representation or guarantee that an appropriate restructuring proposal or
strategic alternative can be formulated for FWE, that any restructuring proposal or
strategic alternative selected by the CRA will be more successful than any or all other
possible restructuring proposals or strategic alternatives, that restructuring is the best
course of action, and, if formulated, that any proposed restructuring plan or strategic
alternative will be accepted by creditors, shareholders or other constituents.

9. Term

The engagement will commence as of the date first above written and may be
terminated by either party without cause by giving thirty days' written notice to the
other party subject to Court approval or with cause on such basis as FEW deems
appropriate. For purposes of this agreement, "cause" shall mean if (i) the CRA's
principal designee on this assignment is convicted of, admits guilt in a written
document filed with a court of competent jurisdiction to, or enters a plea of nolo
contendere to, an allegation of fraud, embezzlement, misappropriation or any felony;
or (ii) there occurs a material breach of any of the material obligations under this
agreement which is not cured within thirty days of written notice thereof to MSG
describing in reasonable detail the nature of the alleged breach. This agreement shall
terminate (i) as may be set forth by Court order, (ii) upon dismissal or conversion of
FWE's Chapter 11 case, or (iii) upon the effective date of any Chapter 11 plan
confirmed in FWE's Chapter 11 case.

10. No Audit, No Duty to Update

The CRA is not being requested to perform an audit, review or compilation or any
other type of financial statement reporting engagement that is subject to the rules of
the AICPA, SEC or other state or national professional or regulatory body. The CRA
is entitled to rely on the accuracy and validity of the data disclosed to it or supplied to
it by the Managers. The CRA is under no obligation to update data submitted to it or
review any other areas.

11. No Third Party Beneficiary

All advice (written or verbal) given by the CRA to FWE in connection with this engagement is intended solely for the benefit and use of FWE in considering the matters to which this engagement relates. No such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without the CRA's prior approval (which shall not be unreasonably withheld), except as required by law.

12. Conflicts

MSG is not currently aware of any relationship that would create a conflict of interest or those parties-in-interest of which you have made MSG aware. Because MSG is a consulting firm that serves parties in numerous cases, both in and out of court, it is possible that MSG may have rendered services to or have business associations with other entities or people which had or have or may have relationships with FWE, including creditors. In the event you accept the terms of this engagement, MSG will not represent, and MSG has not represented, the interests of any such entities or people in connection with this matter.

13. Confidentiality/Non-Solicitation

The CRA shall keep as confidential all non-public information received from FWE in conjunction with this engagement, except (i) as requested by FWE or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

14. Privilege

As to third parties, the CRA shall be deemed covered by and included within FWE's legal privileges including attorney-client privilege in respect of FWE and its counsel and other professionals.

15. No Liability, Indemnification

MSG shall have no liability to FWE for any acts or omissions of MSG personnel, except in the instance of a final judicial determination of fraud or gross negligence directly related to this engagement.

FWE shall indemnify MSG and its personnel involved in serving as CRA to the same extent as the most favorable indemnification FWE is entitled to, or extends, to its officers or directors, whether under its by-laws, articles or certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to MSG and the CRA. The

CRA acknowledges that FWE currently has no officer or director, or errors or omissions, or similar, coverage.

MSG will have the right to disclose to others and use in its marketing efforts in the normal course of business its involvement with and role in behalf of FWE.

16. Miscellaneous

This Agreement shall (a) be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporate the entire understanding of the parties with respect to the subject matter thereof; and (c) not be amended or modified except in writing executed by each of the signatories hereto and subject to Court approval as necessary. FWE and MSG agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or nonperformance of the Company or MSG hereunder.

FIRST WIVES ENTERTAINMENT
    LIMITED LIABILITY COMPANY
    Debtor and Debtor-in-Possession

By: _____
Name:   Paul Lambert
Title:   Managing Member
Tel:   917-232-4397
Fax:   NA
Email:   plambert25@mac

    -and-

By: _____
Name:
Title:
Tel:
Fax:
Email:

MANN SOLUTIONS GROUP, LLC
By: _Carol S Mann_
Name:   Carol S. Mann
Title:   Chief Executive Officer

Address:    56 Byberry Road
            Hatboro, Pennsylvania 19040
Tel:        267-984-5200
Fax:
Email:      carolsmann2010@gmail.com

c:\users\akadish\dropbox\clio\first wives entertainment llc\first wives-bankruptcy\engagement & billings\carol s mann as chief restructuring advisor - letter agreement.docx

Doc ID: fe725935bce345abb9bfa2fdfa178e710b71f5f0

DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Email: akadish@dtklawgroup.com

*Counsel for First Wives Entertainment Limited Liability Company,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST WIVES ENTERTAINMENT | Case No. 16-11345 (MKV) |
| LIMITED LIABILITY COMPANY, | |
| Debtor. | |

-----------------------------------------------------------x

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF THE MANN SOLUTIONS GROUP LLC AS CHIEF RESTRUCTURING ADVISOR

Upon the application (the "**Application**") of FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY, above captioned debtor and debtor-in-possession (the "**Debtor**"), as and for its application for an order, pursuant to section 327(a) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 2014 and 2016, authorizing the retention and employment of the MANN SOLUTIONS GROUP LLC ("**MSG**"), and specifically Carol S. Mann, as Chief Restructuring Advisor for the Debtor, effective as of October 15, 2016 in accordance with the engagement letter filed together with the Application (the "**Engagement Letter**"); and upon considering the Application and the declaration filed in support thereof (the "**Declaration**"); and this Court having jurisdiction over the Application pursuant to 28 U.S.C. § 157(b)(2)(A); and

this Court having determined that based upon the representations in the Application and the Declaration, and a review thereof, neither MSG, nor Ms. Mann represents an interest adverse to the Debtor's estate or its creditors, both are "disinterested persons" as that term is defined under section 101(14) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor; it is hereby

ORDERED, that the Debtor be, and hereby is, authorized to employ and retain MSG as its Chief Restructuring Advisor, pursuant to section 327(a) of the Bankruptcy Code, effective as of October 15, 2016, and MSG be and hereby is, so employed and retained; and it is further

ORDERED, that MSG shall provide the services described in the Declaration and the Engagement Letter, and the Engagement Letter be, and hereby is, approved; and it is further

ORDERED, that MSG shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, any applicable Bankruptcy Rules, United States Trustee Guidelines, and any other applicable order of this Court; and it is further

ORDERED, that pursuant prior to any increases in MSG's hourly rates, as set forth in the Application and the Declaration filed in support thereof, for any individual providing services in the Debtor's case, MSG shall file a supplemental affidavit with the Court and provide ten (10) business days' notice to the Debtor and the United States Trustee; the supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code; the United States Trustee retains all rights to object to any hourly rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

Dated: New York, New York
        November___, 2016

_____
MARY KAY VYSKOCIL
UNITED STATES BANKRUPTCY JUDGE

First Wives-Bankruptcy\Engagement & Billings\order authorizing mann retention.docx